UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
ROGELIO ANDRADE,

                      Plaintiffs,

            -against-

A TO Z HARDWARE, INC. and ABDO
ALSAIDA,

                    Defendants.
--------------------------------------------------------------X

                                    **REPORT AND RECOMMENDATION**
                                    22 CV 7304 (ARR) (CLP)

**POLLAK**, United States Magistrate Judge:

        On December 1, 2022, plaintiff Rogelio Andrade ("Mr. Andrade" or "plaintiff") commenced this action against defendants A to Z Hardware, Inc. ("A to Z Hardware") and Abdo Alsaida ("Alsaida" and, collectively with A to Z Hardware, the "defendants"), seeking unpaid overtime and minimum wages, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL") §§ 190 *et seq.* and §§ 650 *et seq.*, and related regulations, 12 N.Y.C.R.R. § 142-2.4.  (See Compl.[1] ¶ 6).  Despite proper service on Alsaida, he failed to answer or otherwise respond to the Complaint, and on February 27, 2023, the Clerk of Court entered a default against him.  (ECF No. 10).

        On March 21, 2023, plaintiff filed a motion for entry of a default judgment against defendant Alsaida (the "Motion") (ECF No. 11), along with a supporting memorandum of law ("Plaintiff's Memorandum" or "Pl.'s Mem.") (ECF No. 11-1), a declaration by the plaintiff ("Andrade Decl.") (ECF No. 11-2), a chart showing damages calculations (the "Chart") (ECF No. 11-3), and an affidavit by plaintiff's counsel, Ms. Lina Stillman ("Stillman Aff.") (ECF No.

---

[1] Citations to "Compl." refer to plaintiff's Complaint filed December 1, 2022. (ECF No. 1).

11-4).[2]  Thereafter, the Honorable Allyne R. Ross, United States District Judge, referred the

Motion to the undersigned.  (Electronic Order, dated March 21, 2023).  On October 10, 2023,

this Court issued an Order advising Alsaida that if he did not request a hearing and/or file

opposition papers by November 9, 2023, the Motion would be decided based on plaintiff's

submissions alone.  (ECF No. 13).  Plaintiff served a copy of that Order on Alsaida on October

12, 2023 (ECF No. 14), and Alsaida failed to make any filing by the stated deadline.

   After reviewing plaintiff's submissions, and for the reasons set forth below, the Court

respectfully recommends that plaintiff's Motion for Default Judgment be DENIED *with

prejudice* as to certain claims, and that those claims be dismissed *sua sponte* pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.  The Court further recommends that plaintiff's

Motion be DENIED *without prejudice* as to all other claims, and that plaintiff be granted leave to

file an amended motion for default judgment with respect to those claims that addresses the

various issues identified below.

## FACTUAL BACKGROUND

   Mr. Andrade alleges that he was an employee of defendants A to Z Hardware and Alsaida

from approximately 2015 until September 24, 2022.  (Compl. ¶¶ 11, 25).  According to the

Complaint, A to Z Hardware is a hardware store located at 9510 Church Avenue, Brooklyn, N.Y.

11212, and organized under the laws of the State of New York.[3]  (Id. ¶¶ 12–13, 15).  Plaintiff

alleges that Alsaida is the owner, officer and/or agent of A to Z Hardware, having an ownership

interest in and possessing operational control over A to Z Hardware.  (Id. ¶¶ 14, 16).  As

---

[2] Plaintiff purportedly served a copy of the Motion and supporting papers on Alsaida on March 24, 2023. (See ECF No. 12).

[3] Contrary to the allegations in the Complaint,  Plaintiff's Memorandum claims that A to Z Hardware is not a New York corporation and is not authorized to conduct business in New York, although it holds itself out as such. (Pl.'s Mem. at 2 n.1).  Since service of process was not effectuated against A to Z Hardware, plaintiff seeks a default judgment only against defendant Alsaida.  (Id.)

Chairperson and/or Chief Executive Officer of A to Z Hardware, Alsaida is alleged to control significant functions of A to Z, including determining the wages and compensation of the employees, establishing their work schedules, maintaining employee records, and having the authority to hire and fire employees. (Id. ¶¶ 14, 17). Plaintiff alleges that Alsaida and A to Z Hardware are joint employers within the meaning of the FLSA and the NYLL. (Id. ¶¶ 18, 20). Plaintiff further alleges that each year from 2016 to the present, defendants had a gross sales volume of not less than $500,000 and that they were directly engaged in interstate commerce. (Id. ¶¶ 23–24).

Plaintiff alleges that from 2016 until August 2019, he worked from 9:00 a.m. until 8:00 p.m., Monday through Saturday, or 11 hours per day, six days per week, for a total of 66 hours per week. (Id. ¶ 26). From September 2019 to August 2020,[4] his schedule allegedly was from 10:00 a.m. until 5:00 p.m., Monday through Sunday, or seven hours per day, seven days per week, for a total of 49 hours per week. (Id. ¶ 27). From September 2020 until June 2021, plaintiff's schedule allegedly was from 11:00 a.m. to 7:00 p.m., Monday through Saturday, or eight hours per day, six days per week, for a total of 48 hours per week. (Id. ¶ 28). From July 2021 until September 24, 2022, his schedule allegedly was from 11:00 a.m. until 7:00 p.m., Monday through Sunday, or 56 hours per week, with one day off every two months. (Id. ¶ 29).

Plaintiff alleges that he was paid $12 per hour until May 2022, when defendants raised his salary to $13 per hour for the remainder of his employment. (Id. ¶ 30). Plaintiff claims that he was paid in cash, never required to punch in or out, and that he regularly handled goods and other items produced outside of New York and that traveled in interstate commerce. (Id. ¶¶ 31–

---

[4] Although paragraph 27 of the Complaint discusses plaintiff's schedule from September 2019 to August "2022," it is apparent that this is a typographical error as evidenced by the subsequent paragraphs detailing different work schedules from September 2020 until September 24, 2022. (See id. ¶¶ 28, 29).

33).  Plaintiff also alleges that his work duties did not require either discretion or independent judgment.  (Id. ¶ 33).  Plaintiff alleges that he never received overtime compensation for the hours worked over 40 in a workweek, nor was he ever provided with a proper wage statement or written notice of his rate of pay, or other information required by NYLL § 195(1) and (3).  (Id. ¶¶ 34, 36, 37).

Plaintiff alleges that defendants violated the minimum wage and overtime provisions of the FLSA and NYLL (First and Second Causes of Action); violated the NYLL's requirement that employees receive notice at the time of hire of his rate of pay and other information (Third Cause of Action); and violated the NYLL's requirement that employees be provided with accurate wage statements throughout their employment (Fourth Cause of Action).

<u>DEFAULT JUDGMENT</u>

I.    <u>Legal Standard</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Rule 55 sets forth a two-part procedure for entering a default judgment.  First, the Clerk of Court enters a default by noting the defaulting party's failure to respond or appear.  Fed R. Civ. P. 55(a).  Second, if the defaulting party then fails to vacate the entry of default pursuant to Rule 55(c), the appearing party may seek a default judgment to establish liability and, if proven, damages.  Fed R. Civ. P. 55(b).

In determining whether a default judgment should be entered, the Second Circuit has cautioned that a default judgment is an "extreme sanction" that "must remain a weapon of last, rather than first, resort."  <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981); <u>see also</u> <u>Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 127 v. Frank Torrone & Sons, Inc.</u>, No. 14

4

CV 2224, 2018 WL 4771897, at *4 (E.D.N.Y. Oct. 3, 2018), adopting report and recommendation, 2018 WL 6161655 (E.D.N.Y. Sept. 4, 2018).  While the Second Circuit has recognized the pressure on district courts "to dispose of cases that . . . delay and clog [their] calendar[s]" due to the litigants' "disregard of the rules," the Circuit instructs district courts to "maintain a balance between clearing [their] calendar[s] and affording litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993); see also Jeremiah v. 5 Towns Jewish Times, Inc., No. 22 CV 5942, 2023 WL 6593997, at *2 (E.D.N.Y. Aug. 9, 2023), report and recommendation adopted, 2023 WL 5703698 (E.D.N.Y. Sept. 5, 2023).  Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and "doubt[s] should be resolved in favor of the defaulting party." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95–96; see also Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").  Furthermore, "[Rule 55(b)] states that a judgment by default 'may' be entered under specified circumstances, not that it must."  Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. at 162.  Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because the defendant is in default.  See, e.g., id.

Courts have significant discretion and may consider a number of factors in deciding whether to grant a default judgment, including:

1)  Whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings");

2)  "[W]hether the grounds for default are clearly established," Jeremiah v. 5 Towns Jewish Times, Inc., 2023 WL 6593997, at

*2 (quoting <u>Hirsch v. Innovation Int'l, Inc.</u>, No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. 1992)); and

3) "[T]he amount of money potentially involved.  The more money involved, the less justification for entering the default judgment."  <u>Id.</u> (internal citations omitted).

Additionally, a court may consider whether the facts alleged in the complaint state a valid cause of action, whether there are unresolved questions regarding material issues of fact as to liability or damages, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant.  See <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981) (explaining that under Fed. R. Civ. P. 55(b)(2), "a district court has discretion . . . to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action"); 10A Charles A. Wright & Arthur R. Miller, <u>Fed. Prac. & Proc.</u> § 2685 (4th ed. 2008) (Apr. 2023 update) (discussing the aforementioned factors).

When a defendant defaults, the defendant is deemed to have admitted every well-pleaded allegation of the complaint, "except those relating to damages."  <u>Jeremiah v. 5 Towns Jewish Times, Inc.</u>, 2023 WL 6593997, at *3 (quoting <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d at 65.  The Court, however, must review the allegations in the Complaint to determine if the elements of each claim have been adequately pleaded.  See <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d at 65; <u>Rolls-Royce PLC v. Rolls-Royce USA, Inc.</u>, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (adopting report and recommendation and explaining that "it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief").

Once the court determines that default judgment should enter, the plaintiff must still establish his entitlement to the damages sought.  See <u>Flaks v. Koegel</u>, 504 F.2d 702, 707 (2d Cir.

1974) (holding that "[w]hile a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation"); Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995) (explaining that "[a]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded").  In determining the appropriate amount of damages, the court is permitted to "conduct hearings" or make referrals as necessary.  Fed. R. Civ. P. 55(b)(2)(B).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing."  United States v. Richardson, No. 17 CV 2982, 2018 WL 4138934, at *3 (E.D.N.Y. Feb. 13, 2018) (quoting Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989)), report and recommendation adopted, No. 17 CV 2982, 2018 WL 4119518 (E.D.N.Y. Aug. 29, 2018).

II.   Analysis

Despite the numerous opportunities afforded to Alsaida, he has neither contested the default, nor retained counsel.  Alsaida was personally served with the summons and complaint in this action.  (ECF No. 8).  Alsaida thereafter failed to appear and respond to the Complaint. Alsaida also failed to challenge the Clerk's entry of default, even after the Court afforded him an additional opportunity to do so before resolving plaintiff's Motion.  (See ECF No. 13).  It is therefore beyond dispute that Alsaida is in default.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that defendant's default was "crystal clear" when it failed to oppose the plaintiff's motion for a default judgment).

However, as set forth in further detail below, both the factual record and plaintiff's legal arguments are riddled with errors and inconsistencies that frustrate several aspects of the default

judgment and damages analysis.  Although these blunders may ultimately be simple typographical errors—or, perhaps, the consequence of a sloppy cut-and-paste job—several of them were made in sworn statements, and they create material questions about core issues in this case.  Moreover, the sheer volume of the errors, and the fact that they concern what should be simple factual and legal issues, introduces doubt about the accuracy of the other factual assertions within the record.  The Court therefore cannot recommend that the district court enter default judgment at this time.

A.    Inconsistencies in the Factual Record

The Complaint alleges that Mr. Andrade was employed from approximately 2015 until October 24, 2022 (Compl. ¶¶ 11, 25), and Mr. Andrade's Declaration also states that he began working for defendants in 2015.  (Andrade Decl. ¶¶ 3, 5).  However, plaintiff's counsel's Affidavit states that defendants employed Mr. Andrade "[f]rom on or about September 2019 until October 24, 2022."  (Stillman Aff. ¶ 6).  Elsewhere, the Complaint, Ms. Stillman, and Mr. Andrade all refer to a 2016 start date (see Compl. ¶¶ 23, 26; Stillman Aff. ¶ 29; Andrade Decl. ¶ 6), and plaintiff's Memorandum specifically states that plaintiff alleges he began working for defendants on or around December 1, 2016 (Pl.'s Mem. at 16).  Not only is there a discrepancy in the start date for Mr. Andrade's employment, but counsel's Affidavit and the Complaint state that he worked until October 24, 2022, whereas Mr. Andrade's own Declaration states that he was employed until September 24, 2022.  (Compare Compl. ¶ 25, and Stillman Aff. ¶ 6, with Andrade Decl. ¶ 5).[5]  Thus, counsel's Affidavit has Mr. Andrade starting work four years later and ending work one month after he claims in his Declaration.[6]  The question of when Mr.

---

[5] Plaintiff's damages chart also indicates that he is seeking damages from December 1, 2016, through September 24, 2022.  (ECF No. 11-3)

[6] In her Affidavit, counsel also indicates that "for each year from 2019 to date," defendants had a gross annual sales volume of not less than $500,000. (Stillman Aff. ¶ 5 (citing Compl. ¶ 35)).  This differs from Mr.

Andrade worked for defendants is, of course, core to the viability of his claims and the extent of any damages.[7]

Moreover, Mr. Andrade's Declaration makes reference to a parking lot owned and managed by the defendants (Andrade Decl. ¶ 4), and Ms. Stillman's Affidavit outright states that during the relevant time period, Mr. Andrade "was employed by Defendants as a parking attendant at Defendants' parking lot." (Stillman Aff. ¶ 6). These assertions directly contradict allegations in the Complaint and other factual assertions in the supporting papers, which state that Mr. Andrade worked as an employee at the defendants' hardware store. (Compl. ¶ 12; Pl.'s Mem. at 3, 9; Andrade Decl. ¶¶ 3, 5; Stillman Aff. ¶ 4). Given that the name of the corporate defendant is "A to Z Hardware," it appears that counsel's reference to a "parking lot" in her affidavit was an error. However, this discrepancy calls into question not just the basic facts of the case, but also plaintiff's arguments in favor of finding that defendants are covered employers under the FLSA. (See Pl.'s Mem. at 9 (arguing that defendants engaged in interstate commerce while "owning and operating a hardware store" by selling "numerous goods, produce, and other items . . . [that] were produced outside of the State of New York")).

Yet another discrepancy appears in plaintiff's calculation of damages. In explaining the columns in the damages chart and the calculations of backpay owed, plaintiff's counsel represents that the column "Regular Rate of Pay" is calculated by dividing the amount plaintiff was actually paid each week—the "Credited Weekly Pay" that plaintiff attests to having received—and then dividing that amount by the number of hours worked per week during each

---

Andrade's Declaration which states that "[i]n each year of my years of employment," defendants had annual sales of not less than $500,000. (Andrade Decl. ¶ 8).

[7] It may well be the case that the discrepancies in dates described above are a consequence of the differing statutes of limitations applicable to FLSA and NYLL claims. Without any clear indication to that end from plaintiff or his counsel, however, the Court remains unable to conclusively determine the relevant timeframes based on the current record.

period.  (Stillman Aff. ¶ 30).  Counsel's Affidavit then states:  "Plaintiff was not paid the lawful minimum wage compensation of $15.00 per hour (NYLL § 652(1)), but rather only received an hourly rate of $13.50 throughout his employment."  (Id. ¶ 32).  This representation that plaintiff was paid at the "hourly rate of $13.50 throughout his employment," is contradicted not only by the allegations in the Complaint, but also by plaintiff's assertions in his Declaration that he was paid at the rate of $12.00 per hour from the start of his employment until May 2022, and was paid $13.00 per hour thereafter.  (Andrade Decl. ¶ 7).

The Court therefore recommends that plaintiff be permitted to refile his Motion and submit new supporting papers that resolve the errors noted above and clarify: (1) the dates on which his employment with defendants began and ended; (2) the period of employment with respect to which plaintiff brings his FLSA claims; (3) the period of employment with respect to which plaintiff brings his NYLL claims; (4) the nature of defendants' business and plaintiff's role therein; and (5) plaintiff's hourly rate of pay during each year for which plaintiff brings an FLSA or NYLL claim.  Plaintiff will also need to correct his damages calculations to account for these discrepancies.

B.    Unviable Claims

Regardless of the discrepancies noted above, the Court has determined that there are several claims that are not viable under any set of facts alleged.

1.    FLSA Minimum Wage Claims[8]

Plaintiff alleges that the defendants "failed to pay Plaintiff minimum wage" in violation of the FLSA.  (Compl. ¶ 44).  The FLSA requires "[e]very employer" to "pay to each of his

---

[8] In light of the Court's ultimate recommendation that the district court should not enter default judgment at this time and should instead permit plaintiff to revise and refile his Motion, the Court has only reached those issues with respect to which it has identified major errors.  The Court therefore does not opine on the question of whether plaintiff has adequately alleged a claim for overtime violations under the FLSA.

[covered] employees . . . wages at" a specified rate.  29 U.S.C. § 206(a).   To establish a claim

under the FLSA, a plaintiff must prove four elements:

1)  That the defendant failed to pay the mandated minimum wage;

2)  That the defendant is a covered employer under either the "individual coverage" theory or the "enterprise coverage" theory;

3)  That plaintiff is an "employee" within the meaning of the FLSA; and

4)  That the employment relationship is not one that is exempted from the FLSA.

See id.; Rosenbaum v. Meir, No. 20 CV 4520, 2023 WL 2305960, at *4 (E.D.N.Y. Mar. 1,

2023); Edwards v. CommunityEnters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing

Tony & Susan Alamo Found. v. Secretary of Lab., 471 U.S. 290, 295 (1985)).

The Court concludes that plaintiff has not satisfied—and, based on the allegations in the

Complaint, cannot satisfy—even the first of these four elements.  The federal minimum wage

during the relevant time period was $7.25 an hour.  See 29 U.S.C. § 206(a)(1).  Nowhere in any

of the papers submitted to the Court does plaintiff allege or argue that he was paid less than $12

per hour during his employment; thus, he has no viable minimum wage claims under the FLSA.

The Court therefore recommends that the district court deny the Motion for Default

Judgment *with prejudice* as to plaintiff's FLSA minimum wage claims and dismiss them *sua

sponte* for failure to state a claim.  See Choi v. 37 Parsons Realty LLC, 642 F. Supp. 3d 329, 336

(E.D.N.Y. 2022) (stating that, just as district courts may *sua sponte* dismiss a complaint under

Rule 12(b)(6), so too should "default judgment motion[s] . . . be denied and the complaint

dismissed if it is frivolous, or, at least, if it is clear that the plaintiff could not prevail as a matter

of law"); Citadel Mgmt., Inc. v. Telesis Tr., Inc., 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000)

(recognizing that "[s]ua sponte dismissal for failure to state a claim is appropriate where the

plaintiff is given notice and an opportunity to be heard" (citing <u>Wachtler v. County of Herkimer</u>, 35 F.3d 77, 82 (2d Cir. 1994))).

> 2.    <u>NYLL Minimum Wage Claims</u>[9]

Plaintiff also alleges that defendants violated the NYLL's minimum wage provisions by paying him $12.00 per hour from the start of his employment until May 2022, and thereafter paying him $13.00 per hour, both of which he argues are "substantially below the relevant state minimum wages" applicable at the time.  (Pl.'s Mem. at 16; <u>see also</u> Compl. ¶¶ 26–30).  Like the FLSA, the NYLL establishes certain minimum wage rates that have increased over set periods of time.  <u>See</u> 12 N.Y.C.R.R. §§ 146-1.2.  Plaintiff's Memorandum of Law, however, does not accurately state the applicable minimum wage rates for the periods during which plaintiff was allegedly employed.

As of December 31, 2016, the minimum wage for hours worked in New York City depends in part upon whether the employee works for a "[l]arge employer[]" of eleven or more employees, or a "[s]mall employer[]" of ten or less employees.  NYLL § 652(1)(a)(i)–(ii); <u>see also</u> 12 N.Y.C.R.R. § 146-1.2(a)(1)(a)-(b).  The applicable minimum wage rates break down as follows:

| Applicable Dates | Large Employers | Small Employers |
|---|---|---|
| 12/31/2015 to 12/30/2016 | $9.00 | $9.00 |
| 12/31/2016 to 12/30/2017 | $11.00 | $10.50 |
| 12/31/2017 to 12/30/2018 | $13.00 | $12.00 |
| 12/31/2018 to 12/30/2019 | $15.00 | $13.50 |
| 12/31/2019 to 12/30/2023 | $15.00 | $15.00 |

---

[9] As with plaintiff's FLSA overtime claims, the Court does not reach whether plaintiff adequately pleaded NYLL overtime claims.

NYLL §§ 652(1), (1)(a)(i)–(ii).[10]

After applying the accurate minimum wage rates noted above to the allegations in the Complaint, two things are clear:

- From December 1, 2016, to December 30, 2017, plaintiff's wage of $12.00 per hour satisfied the NYLL's minimum wage requirements, irrespective of whether the defendants are large or small employers, and plaintiff thus has not adequately pleaded NYLL minimum wage claims for that period;

- From December 31, 2018, until his voluntary termination on September 24, 2022, plaintiff's wages fell below the NYLL's minimum wage requirements, irrespective of whether the defendants are large or small employers, and plaintiff has thus sufficiently alleged underpayments under the NYLL's minimum wage provisions for work performed during that period.[11]

Whether plaintiff's wage of $12.00 per hour violated the NYLL's minimum wage requirements during the period of December 31, 2017, to December 30, 2018, depends on whether the defendants qualify as small employers—in which case the applicable rate of $12.00 per hour matches his wage—or large employers—in which case the applicable rate was $13.00 per hour, resulting in underpayments for that period.  Neither the Complaint nor any of the papers filed in support of the Motion indicate how many employees worked for the defendants.  Plaintiff therefore has not provided sufficient information to permit the Court to determine what wage rate applied, and thus whether plaintiff has viable NYLL minimum wage claims for the period December 31, 2017, to December 30, 2018.

---

[10] According to plaintiff's Memorandum of Law, the applicable minimum wage rates under the NYLL are: (1) $12.00 per hour from January 1, 2017, until December 31, 2017; (2) $13.50 per hour from January 1, 2018, to December 31, 2018; and (3) $15.00 per hour from January 1, 2019, to September 22, 2022.  (Pl.'s Mem. at 16 (citing NYLL § 652(1)); see also Stillman Aff. ¶ 10).  Plaintiff asserts in his damages chart that the applicable wage rate under the NYLL from December 1, 2016, to December 31, 2016, was $10.50 per hour.  (ECF No. 11-3).  Even more puzzling than these blatant errors is counsel's representation that the applicable minimum wage was $15.00 during the entire period of plaintiff's employment.  (Stillman Aff. ¶ 32).

[11] The Court does not reach the question of whether plaintiff's allegations satisfy the other elements of an NYLL minimum wage claim with respect to this period.

In light of the above, the Court respectfully recommends that the Motion be denied *with prejudice* as to plaintiff's NYLL minimum wage claims for work performed from December 1, 2016, to December 30, 2017, and that the district court *sua sponte* dismiss those claims pursuant to Rule 12(b)(6). See, e.g., Choi v. 37 Parsons Realty LLC, 642 F. Supp. 3d at 336. With respect to the remainder of plaintiff's NYLL minimum wage claims, the Court respectfully recommends that the district court deny the Motion without prejudice, and with leave to file an amended motion and supporting papers that attest to defendants' employee count and apply the correct minimum wage rate based on that count.

### 3.    NYLL Wage Statement and Notice Claims

Under the NYLL's notice and wage statement provisions—known collectively as the "Wage Theft Prevention Act" or "WTPA"—employers are required to give each employee a notice of their rate of pay at the time of hiring and a wage statement listing specific information with each paycheck. NYLL § 195(1)(a), (3). The notice must contain the rate or rates of pay, whether the employee was to be paid by the hour, shift, day, or week, any allowances claimed as part of the minimum wage, the regular pay day, the name of the employer, the physical address of the employer's main office, and the employer's telephone number in both English and the employee's primary language, if different from English. Id. § 195(1)(a). The wage statement must include "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions;" and certain allowances. Id. § 195(3).[12]

---

[12] A plaintiff may recover $50 for each workday during which the employer failed to provide the required notice, not to exceed $5,000. Id. § 198(1-b). If an employer fails to provide an employee with a pay stub, or with a pay stub containing the necessary wage statement, the employee may recover $250 for each workday for which the employer failed to provide the statement, up to a total of $5,000. Id. § 198(1-d).

Although plaintiff alleges that he was never provided with notices or wage statements compliant with NYLL § 195(1) and 195(3), he has not alleged that he suffered any injury as a result of these violations.  Recently, the Supreme Court explained in TransUnion LLC v. Ramirez, 594 U.S. 413, 426 (2021), that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."  The Supreme Court clarified that "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."  Id. at 427.  Courts in this Circuit, applying TransUnion LLC v. Ramirez to the wage statement and wage notice provisions of the NYLL, have since required plaintiffs to identify the harm caused to them by these violations—i.e., to allege and ultimately prove that they suffered a specific injury as a result of defendants' noncompliance with the notice and wage statement provisions—and have concluded that a statutory violation alone is insufficient.  Compare Stih v. Rockaway Farmers Market, Inc., No. 22 CV 3228, 2023 WL 2760492, at *7 (E.D.N.Y. Apr. 3, 2023) (finding plaintiff pleaded a sufficient injury flowing from defendants' alleged violations of the NYLL wage statement and notice provisions where plaintiff alleged that the noncompliance "caused plaintiff to fail to realize that defendants were deducting certain benefits from his wages, resulting in his underpayment"), with Francisco v. NY Tex. Care, Inc., No. 19 CV 1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar 28, 2022) (declining to certify a class action based on the defendants' alleged improper wage statement and notice policies because the plaintiff did not demonstrate, either in the pleadings or the record, a tangible injury or close parallel to a traditional cause of action sufficient to establish standing to bring those claims), Ramirez v. Urion Constr. LLC, No. 22 CV 3342, 2023 WL 3570347, at *5 (S.D.N.Y. Apr. 28, 2023)

15

(declining to award statutory damages and dismissing NYLL wage statement and notice claims on motion for default judgment due to lack of standing for failing to allege a concrete, fairly traceable injury), report and recommendation adopted, 2023 WL 3570639 (S.D.N.Y. May 19, 2023), Belliard v. Tarnovsky, No. 20 CV 1055, 2023 WL 3004963, at *6 (S.D.N.Y. Mar. 6, 2023) (declining to award a plaintiff statutory damages under the NYLL despite defendant's default because plaintiff "merely state[d] that he was not provided the new hire notice or wage statements" and failed to "assert any other facts describing the injury in fact caused by not receiving these documents"), report and recommendation adopted, 2023 WL 3304723 (S.D.N.Y. May 8, 2023), and Neor v. Acacia Network, Inc., No. 22 CV 4814, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) (dismissing a complaint's claims under the NYLL wage statement and notice provisions for lack of standing where the complaint did not "allege any harm stemming from a lack of accurate wage notices or statements").

In the instant case, plaintiff merely alleged that he was not provided with the requisite notice and wage statements. He has not alleged any specific harm which flowed from defendants' noncompliance with the NYLL provisions, and therefore has not demonstrated his standing to bring these claims. In the absence of allegations that, if true, would establish such standing, the Court is not in a position to recommend that default judgment should enter with respect to these claims. Accordingly, the Court respectfully recommends that if plaintiff files an amended motion for default judgment, he be given an opportunity to address why his claims under the NYLL wage statement and notice provisions should not be dismissed for lack of standing.

C.    Damage Calculations

In support of his request for damages, plaintiff has submitted a Declaration and a Chart setting forth various amounts for damages based on alleged minimum wage and overtime

violations.  (See ECF No. 11-3).  The Chart contains columns labeled "Pay Period,"  "No. Weeks in Pay Period," "Hours Per Week in Period," "Calc. Regular Rate of Pay," "Calc. OT Rate of Pay," "Minimum Wage Rate," "Minimum Overtime (OT)," "Lawful Weekly Pay," "Credited Weekly Pay," "Underpayment Per Week," "Pre-Judgment Int.," "Totals," "Days," and a final column labeled "Prejudgment Interest."  (Id.)  According to the Chart, plaintiff seeks $71,749 in compensatory damages based on minimum wage and overtime violations, liquidated damages of $71,749, $10,000 for wage notice and wage statement violations, and prejudgment interest in the amount of $28,893.33, for a total award of $182,391.33.  (Id.)

It is clear that the minimum wage rate, and thus the 1.5x minimum overtime wage rate,[13] applied in the Chart suffer from the same error identified above with respect to the applicable minimum wage under the NYLL.  (Compare Chart, Column "Minimum Wage Rate," with Pl.'s Mem. at 16, and Stillman Aff. ¶ 10).[14]  Moreover, the damages figures listed in the Chart fail to account for the fact that plaintiff has not adequately stated a minimum wage claim under the NYLL for the period of December 1, 2016, to December 30, 2017, or that he likely lacks standing to bring NYLL notice and wage statement claims.  Finally, the Court cannot determine whether plaintiff has an NYLL minimum wage claim for the period of December 31, 2017, to December 30, 2018, adding further uncertainty to the validity of plaintiff's damages calculations.

In light of the above, the Court could not recommend the appropriate measure of damages for plaintiff's viable claims, even if the Court had concluded that default judgment should enter as to those claims.  Similarly, since liquidated damages are also dependent upon the

---

[13] Overtime is calculated at a rate of one and one-half times the employee's regular hourly pay for work performed in excess of 40 hours per week.  29 U.S.C. § 207(a)(1); see also 12 N.Y.C.R.R. § 142-3.2.

[14] It is irrelevant that plaintiff accurately stated the federal minimum wage applicable during the relevant period.  As noted above, plaintiff has failed to state a claim for failure to pay minimum wage under the FLSA and it is clear that the overtime wage rates listed in the Chart were calculated based on the state, not federal minimum wage.  (See Chart, Column "Minimum Overtime (OT)").

amount of wages owed, the Court also lacks sufficient information to assess the appropriate

measure of liquidated damages at this time.

ATTORNEY'S FEES AND COSTS

Plaintiff also seeks an award of $5,180.00 in attorney's fees and $570.00 in costs.

(Stillman Aff. ¶ 48; Pl.'s Mem. at 17).  For the reasons set forth below, the Court concludes that,

even if the district court were to enter default judgment on some or all of plaintiff's claims, his

counsel has not provided sufficient documentation or information to determine whether the

requested fees and costs are reasonable.

A.    Legal Standard

"Under the FLSA and the NYLL, a prevailing plaintiff is entitled to reasonable attorneys'

fees and costs."  Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020) (citing 29 U.S.C. §

216(b); NYLL § 663(1)).  "The party seeking reimbursement of attorney's fees bears the burden

of proving the reasonableness and the necessity of the hours spent and rates charged."  Fermin v.

Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 51 (E.D.N.Y. 2015) (quoting N.Y.S. Ass'n

for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir.1983)).  In this Circuit, the fee

request must be "accompanied by contemporaneous time records that show for each attorney the

date the work was done, 'the hours expended, and the nature of the work done.'"  Id. (quoting

Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co. Inc., No. 07 CV

2568, 2012 WL 1414872, at *10 (E.D.N.Y. Jan. 20, 2012)).

In the context of a motion for default judgment in an FLSA action, courts in this Circuit

have assessed fee requests by applying the lodestar method.  See Jemine v. Dennis, 901 F. Supp.

2d 365, 391–92 (E.D.N.Y. 2012) (collecting cases).  In conducting a lodestar assessment, "courts

must multiply a reasonable number of hours for the case" with a reasonable hourly rate for the

attorney(s) requesting the fee.  Allen v. County of Nassau, No. 22 CV 1572, 2023 WL 4086457,

18

at *5 (E.D.N.Y. June 20, 2023); see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546, 551–52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  What constitutes a "reasonable number of hours" and a "reasonable hourly rate" will vary from case-to-case and attorney-to-attorney, and courts will often examine both the experience and expertise of the attorney as well as the complexity of the case.  See Allen v. County of Nassau, 2023 WL 4086457, at *5 (collecting cases); Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 27–29 (S.D.N.Y. 2015) (noting that in FLSA actions, rates between $150 and $450 per hour may be appropriate depending on the experience of the attorney).

With respect to costs, the core question is whether plaintiff's counsel seeks reasonable "costs that are tied to 'identifiable, out-of-pocket disbursements.'"  Jemine v. Dennis, 901 F. Supp. 2d at 394 (quoting Moon v. Kwon, No. 99 CV 11810, 2002 WL 31512816, at *30–31 (S.D.N.Y. Nov. 8, 2002)); see also Fisher v. SD Prot. Inc., 948 F.3d at 600 (stating that courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients").

B.    Analysis

Plaintiff's counsel, Ms. Stillman, provided her billable rate but did not provide billing records or any information on the total number of hours worked (see Stillman Aff. ¶ 45), as is required in this Circuit.  See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d at 51. Ms. Stillman provided a high-level summary of the work she did on this matter (Stillman Aff. ¶ 46), but not any information that would permit the Court to determine whether she spent a reasonable amount of time on those tasks, as is required to conduct a lodestar analysis.  See Allen v. County of Nassau, 2023 WL 4086457, at *5.  Finally, Ms. Stillman's Affidavit includes a paragraph where she apparently intended to break down the $570.00 in costs for which she seeks reimbursement, but she mistakenly omitted that information.  (Stillman Aff. ¶ 47).  The

Court therefore cannot assess whether the costs Ms. Stillman seeks to recover are tied to identifiable expenses for which reimbursement is appropriate in this context.  See, e.g., Jemine v. Dennis, 901 F. Supp. 2d at 394.

    For each of the reasons noted above, the Court is unable to assess Ms. Stillman's request for attorney's fees and costs, and thus could not recommend approval of such an award even if the Court were to recommend granting the Motion with respect to some or all of plaintiff's claims.

<u>CONCLUSION</u>

    Given the issues outlined above, the Court respectfully recommends that the district court:

1) Deny the Motion *with prejudice* as to plaintiff's FLSA minimum wage claims in their entirety and plaintiff's NYLL minimum wage claims for the period December 1, 2016, to December 30, 2017, and dismiss those claims pursuant to Rule 12(b)(6);

2) Deny the Motion *without prejudice* as to plaintiff's remaining claims, and permit plaintiff to file an amended motion for default and revised supporting papers that address the various issues in the manner identified above; and

3) Deny the request for fees and costs without prejudice, and permit Ms. Stillman to submit a revised affidavit in support of her fee request along with the relevant billing records and proof of costs.

    Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiff is directed to serve this Report and Recommendation on the defendants and file proof of service on the docket immediately thereafter.

**SO ORDERED.**

Dated: Brooklyn, New York
February 5, 2024

_Cheryl L. Pollak_
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York