UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ROGELIO ANDRADE,

                                Plaintiff,

                -against-

A TO Z HARDWARE, INC. and ABDO
ALSAIDA,
                                Defendants.
----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
22 CV 7304 (NRM) (PCG)

**CROSS-GOLDENBERG**, United States Magistrate Judge:

On December 1, 2022, plaintiff Rogelio Andrade ("Mr. Andrade" or "plaintiff") commenced this action against defendants A to Z Hardware, Inc. ("A to Z Hardware"), and Abdo Alsaida, seeking unpaid overtime and minimum wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., the New York Labor Law ("NYLL") §§ 190, et seq. and §§ 650, et seq., and related regulations, 12 N.Y.C.R.R. § 142-2.4.  (See ECF No. 1 ("Compl.") ¶ 6; see also ECF No. 26 ("Am. Compl.") ¶ 6).  Currently pending before this Court is plaintiff's Third Motion for Default Judgment.[1]  (ECF No. 40).

For the reasons set forth below, the Court respectfully recommends that plaintiff's renewed Motion for Default Judgment be granted.

FACTUAL BACKGROUND

According to the Amended Complaint, defendant Alsaida operated a hardware store, A to Z Hardware, located at 9510 Church Avenue, Brooklyn, New York 11212.  (Am. Compl. ¶¶ 1, 14).  Plaintiff alleges that the hardware store was a business engaged in interstate commerce, relying on goods and products that were produced outside of the State of New York and

---

[1] Plaintiff mistakenly filed his third Motion for Default Judgment on the docket as "Second Motion for Default Judgment."  For the sake of clarity, the Court refers to the motion as "Third Motion for Default Judgment."

transported across state lines, and that defendants had a gross annual volume of sales exceeding $500,000.  (Id.¶ 15).  Defendant Alsaida is alleged to be the principal, owner, and/or agent of A to Z Hardware, possessing an ownership interest in the business and exercising operational control over the store, including the power to determine the wages and compensation of the employees, dictate their work schedules, maintain employee records, pay the employees, and unilaterally hire and fire employees.  (Id. ¶¶ 1, 16).

Plaintiff Rogelio Andrade alleges he was an employee of A to Z Hardware from approximately December 1, 2016 to September 24, 2022, with his primary duties including unpacking, inventorying, and displaying merchandising; cleaning and arranging products; and delivering orders to vehicles.  (Id. ¶ 12).  He alleges that (1) from December 1, 2016 to August 2019, he worked 11 hours per day, six days per week at a rate of $12 per hour; (2) from September 2019 to August 2020,[2] he worked 7 hours per day, 7 days per week at a rate of $12 per hour; (3) from September 2020 to June 2021, he worked 8 hours per day, 6 days per week at a rate of $12 per hour; (4) from July 2021 through May 2022, he worked 8 hours per day, 7 days per week, at a rate of $12 per hour with one day off every two months; and (5) from June 2022 through September 24, 2022, he worked 8 hours per day, 7 days per week at a rate of $13 per hour, with one day off every two months.  (Id. ¶¶ 29-31).

During all relevant times, plaintiff alleges he was paid in cash and that defendants did not utilize any system to track his hours.  (Id. ¶ 35).  He also claims that he never received time-and-a-half pay for hours worked in excess of 40 per week or proper wage statements or written notice of pay rates, which plaintiff alleges deprived him of economic benefits and kept him

---

[2] Although paragraph 30 of the Amended Complaint discusses plaintiff's work schedule from September 2019 to August "2022," it is apparent that this is a typographical error as evidenced by the subsequent paragraphs detailing different work schedules from September 2020 until September 24, 2022.  (See id. ¶¶ 28, 29).  This error was noted in this Court's prior Report and Recommendation, but was not corrected. (See ECF No. 15 at 3 n. 4).

intentionally uninformed so that plaintiff could not make informed decisions about his rights and defendants could avoid paying proper wages.  (Id. ¶¶ 32, 46, 47, 48).

PROCEDURAL BACKGROUND

Plaintiff filed his initial Complaint on December 1, 2022.  (ECF No. 1).  Defendants were each served on December 27, 2022, and each had a corresponding deadline to answer or otherwise respond to the Complaint by January 17, 2023.  (ECF Nos. 7, 8).  After defendants failed to meet that deadline, plaintiff requested entry of default (ECF No. 9), and the Clerk of Court entered default against the defendants on February 27, 2023.  (ECF No. 10).  Thereafter, on March 21, 2023, plaintiff filed his first motion for default judgment.  (ECF No. 11).  On February 5, 2024, Magistrate Judge Cheryl L. Pollak issued a Report and Recommendation recommending that the motion be denied with prejudice as to plaintiff's FLSA minimum wage claims in their entirety and as to plaintiff's NYLL minimum wage claims for the period of December 1, 2016 to December 30, 2017 because he was paid more than the federal and New York minimum wage relevant to that period, and that the motion be denied without prejudice as to the remaining claims. (ECF No. 15). [3]   The Court also recommended that plaintiff be given an opportunity to address why his Wage Theft Prevention Act claims should not be dismissed for lack of standing for failure to show harm flowing from defendants' failure to provide requisite notice and wage statements.  (Id. at 16).  On February 20, 2024, plaintiff voluntarily dismissed

---

[3] In addition to identifying certain nonviable claims, the Court identified a number of factual discrepancies between the allegations in the Complaint, plaintiff's Declaration, and counsel's Affidavit, including the start and end dates of his employment and the end date, the period for which he was seeking damages, references to his employment as a parking lot attendant when other factual assertions indicated he was employed at defendants' hardware store, representations as to the rate at which plaintiff was actually paid, and what he should have been paid.  (ECF No. 15 at 8–10).  The Court recommended that plaintiff be permitted to refile his Motion with new supporting papers clarifying: 1) the dates of employment; 2) the periods with respect to which plaintiff brought his FLSA and NYLL claims; 3) the nature of defendants' business and plaintiff's role; and 4) plaintiff's hourly rate of pay for each year in which he claimed violations of the FLSA or NYLL.  The Court also noted that he would need to correct his damages calculations to correct for the discrepancies.

his FLSA claims (ECF No. 16), and the district court adopted Judge Pollak's Report and Recommendation in its entirety. (ECF No. 17).

Plaintiff submitted a renewed motion for default judgment on February 27, 2024. (ECF No. 18). On February 28, 2024, the Amended Motion was referred to Magistrate Judge Pollak for a Report and Recommendation. (Electronic Order, dated 2/28/2024). On July 26, 2024, Judge Pollak issued an Order for plaintiff to show cause why, following the dismissal of plaintiff's federal claims, the Court should not recommend dismissal for lack of subject matter jurisdiction. (ECF No. 21). On August 9, 2024, plaintiff filed a letter with the Court explaining that the voluntary dismissal of the FLSA overtime claims was an error and requesting that both the federal minimum wage and overtime claims be reinstated. (ECF No. 22 at 1–2). On August 17, 2024, the Court issued a Report and Recommendation in response to plaintiff's letter, recommending that plaintiff be granted leave to file an amended complaint repleading the FLSA overtime claims and any existing state law claims, that entry of default be vacated, and that plaintiff's motion for default judgment be denied as moot. (ECF No. 23). The district court adopted Judge Pollak's Report and Recommendation in its entirety on September 3, 2024. (ECF No. 25).

Plaintiff filed his Amended Complaint on October 15, 2024, maintaining his NYLL claims and reasserting his FLSA overtime claim. (ECF No. 26 ("Am. Compl.")). Both defendants were served with the Amended Complaint on October 29, 2024 with a resultant deadline to answer or otherwise respond to the amended complaint by November 19, 2024. (ECF Nos. 29, 30). On December 5, 2024, plaintiff requested a certificate of default (ECF No. 31), which the Clerk of Court denied because the request was not accompanied by a certificate of service as required by Local Rule 55.1. (Electronic Order, dated 12/6/2024). Plaintiff renewed

4

his request for a certificate of default on December 26, 2024 (ECF Nos. 32, 33, 34), and default was entered on December 27, 2024.  (ECF No. 35).  On January 11, 2025, plaintiff filed a request for Sum Certain Default Judgment, which the Clerk of Court initially entered on May 9, 2025 in the amount of $153,498.00, with prejudgment interest in the amount $13,814.82. (ECF No. 37).  That judgment was vacated on May 13, 2025, pursuant to an Order of the district court referring any motion for default judgment to Magistrate Judge Cheryl L. Pollak to prepare a Report and Recommendation.  (ECF No. 38).

Plaintiff filed his Third Motion for Default Judgment on May 29, 2025.  (ECF No. 40). Judge Pollak then issued an Order indicating that defendants could request an inquest hearing or file papers in response to plaintiff's motion by November 4, 2025. (ECF No. 41).  On January 14, 2026, the case was reassigned to the undersigned.  Having received no communication from defendants, the Court proceeds to consider plaintiff's Third Motion for Default Judgment.

DISCUSSION

I.    Plaintiff Is Entitled to Default Judgment

   A.  Plaintiff Has Established Default

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Rule 55 sets forth a two-step process for an entry of default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  Id. Second, after the Clerk of Court enters a default against a party, if that party fails to appear or

5

otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).

The Second Circuit has cautioned that since a default judgment is an "extreme sanction[,]" it should only be entered as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95–96.  Thus, considering the "oft-stated preference for resolving disputes on the merits[,]" default judgments are "generally disfavored[,]" and doubts should be resolved in favor of the defaulting party.  Id.  Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a defendant is in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including:  (1) whether the grounds for default judgment are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants on notice, see Fed. R. Civ. P. 54(c) (stating a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4–5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved—the more money involved, the less justification for

6

entering the default judgment.  Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendants.  See Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012).

The burden is on the plaintiff to establish his entitlement to recovery.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993).   Here, that burden is clearly met.  A defendant defaults when it "has failed to plead or otherwise defend" the case.  Fed. R. Civ. P. 55(a).  Despite being properly served with the Summons, Complaint, and Amended Complaint, defendants have failed to obtain counsel or respond to the pleadings.  This constitutes default.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that defendant's "default is crystal clear – it does not even oppose this motion").  Moreover, the failure of the corporate defendant to obtain counsel in this case constitutes a failure to defend because corporate defendants, as corporations, cannot proceed in federal court *pro se*.  See Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only); see also Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney").

The defendants have been afforded more than adequate opportunity to obtain counsel and to respond to the plaintiff's claim and have not done so.  Accordingly, the Court finds no compelling reason to delay the case any further and finds that default is appropriate here.

B.  Plaintiff Has Established Default Judgment Liability

In this case, plaintiff alleges that defendants violated the FLSA and the NYLL by failing to pay overtime wages and further violated NYLL by failing to pay minimum wage and failing to provide plaintiff with proper wage notices and wage statements.  (Am. Compl. ¶¶ 2-5, 49-68). Once a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993).  Thus, accepting the allegations in the Amended Complaint as true, for the reasons set forth infra, the Court respectfully recommends that plaintiff be deemed to have established default judgment liability for his NYLL claims.

1)  FLSA Overtime and Recordkeeping Claims

To establish a claim under the FLSA, a plaintiff must prove that: (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.  Edwards v. Community Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing 29 U.S.C. §§ 206(a), 207(a); Tony & Susan Alamo Found. v. Secretary of Labor, 471 U.S. 290, 295 (1985)).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).

8

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1); Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098. An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a). To "employ" "includes to suffer or permit to work." 29 U.S.C. § 203(g). The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce[.]" 29 U.S.C. § 206(a).

An individual may be liable as an "employer" under the FLSA if he exercises "operational control" over the employees in question, see Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013), cert. denied, 572 U.S. 1002 (2014), and individuals who are found to be "employers" under the FLSA may be held jointly and severally liable to the plaintiff. Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002); see also Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011).

In the Complaint, plaintiff alleges that the corporate defendant, A to Z Hardware, has been and continues to be an employer engaged in interstate commerce within the meaning of the FLSA. (Am. Compl. ¶¶ 15). Plaintiff further alleges that the corporate defendant has had annual gross revenues in excess of $500,000 at all relevant times. (Id.). Thus, plaintiff has adequately alleged that defendant A to Z Hardware is a covered employer under the FLSA.

Plaintiff alleges in the Amended Complaint that he worked for the defendants unpacking, inventorying, and displaying merchandising; cleaning and arranging products; and delivering orders to vehicles. (Am. Compl. ¶ 12). Plaintiff also alleges that defendant Alsaida was the

9

owner of the corporate defendant, exercising authoritative control over the business's functions. (Id. ¶ 16). Thus, based on the allegations in the Complaint, plaintiff qualifies as an "employee" and defendants qualify as "employers" under the FLSA. The Court does not find any basis for exempting the employment relationship at issue from coverage under the FLSA.[4]

Plaintiff alleges that defendants violated the FLSA by failing to pay overtime wages for hours worked in excess of 40 per week. (Id. ¶¶ 52, 53). Since defendants have defaulted, the Court accepts plaintiff's uncontested allegations as true and respectfully recommends that plaintiff be deemed to have sufficiently set forth the necessary elements to state an overtime wages claim under the FLSA against the corporate defendant and against individual defendant Alsaida.

Plaintiff also alleges that defendants have failed to satisfy FLSA's recordkeeping requirements. (Am. Compl. ¶ 54). Although the FLSA requires an employer to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him," 29 U.S.C. § 211(c), the FLSA does not provide a private right of action for these recordkeeping violations. Jimenez v. W&M Servs. Inc., No. 22 CV 5061, 2024 WL 1259359, at * (E.D.N.Y. Mar. 25, 2024) (citing Ayala v. Looks Great Servs., Inc., No. 14 CV 6035, 2015 WL 4509133, at *6 (E.D.N.Y. July 23, 2015)). Accordingly, the Court respectfully recommends that plaintiff's recordkeeping claim be dismissed.

2) NYLL Minimum Wage and Overtime Claims

Plaintiff alleges that defendants violated the NYLL by failing to pay the state minimum wage and failing to pay the required overtime rate. The NYLL provides for a minimum wage

---

[4] See 29 U.S.C. § 213(a) (setting forth the exemptions under the FLSA).

10

and overtime scheme that is "largely similar" to that contained in the FLSA. Man Wei Shiu v. New Peking Taste Inc., No. 11 CV 1175, 2014 WL 652355, at *10 (E.D.N.Y. Feb. 19, 2014) (citing Rosas v. Subsational, No. 11 CV 2811, 2012 WL 4891595, at *4 (E.D.N.Y. Sept. 11, 2012), adopted, 2012 WL 4866678 (E.D.N.Y. Oct.15, 2012)). Although both the NYLL and FLSA require employers to pay employees a specified minimum wage, the rates established under the NYLL have exceeded those rates set out under the FLSA. Compare 29 U.S.C. § 206 with N.Y. Lab. L. § 652. Like the FLSA, the NYLL requires employers to pay overtime rates calculated at one-and-one-half times the employees' regular rate of pay for all hours worked in a week over 40 hours. See N.Y. Lab. L. § 652; 12 N.Y.C.R.R. §§ 142-2.2, 146-1.4; see, e.g., Charvac v. M & T Proj. Mgrs. of N.Y., Inc., No. 12 CV 5637, 2015 WL 5475531, at *4–5 (E.D.N.Y. June 17, 2015); see also Chawdhury v. Hamza Express Food Corp., No. 14 CV 150, 2015 WL 5541767, at *4–5 (E.D.N.Y. Aug. 21, 2015), report and recommendation adopted by 2015 WL 5559873 (E.D.N.Y. Sept. 18, 2015). .

To recover under the NYLL, plaintiffs must prove that they are "employees" and that defendants are "employers" as defined by the statute. See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407–08 (E.D.N.Y. 2009). Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business to be subjected to the law. See N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as [an] employer"). Similarly, an employee is simply defined as "any individual employed or permitted to work by an employer in any occupation[.]" N.Y. Lab. Law § 651(5). In this case, plaintiff's allegations that he was employed by defendants within the meaning of the

11

NYLL §§ 2 and 651 suffice to put him under the coverage of the NYLL. (Am. Compl. ¶¶ 4, 13, 15, 26, 32, 34, 35).

Plaintiff alleges that defendants failed to pay minimum and overtime wages. (Am. Compl. ¶¶ 1-3, 19(b), 28, 31-34, 41, 49-60). Accordingly, based on these uncontested allegations, the Court respectfully recommends that plaintiff be deemed to have adequately alleged the elements necessary to establish liability on these claims under the NYLL.

### 3) New York Wage Theft Prevention Act Claims

Plaintiff claims that defendants violated the Wage Theft Prevention Act ("WTPA"), NYLL §§ 195(1) and 195(3), which requires employers to provide employees with notices regarding their wages at the time of their hiring and wage statements with each payment of wages. (Am. Compl. ¶¶ 4, 19(c)-(d), 38-40, 43, 46, 61-68). [5] The notice must contain the rate or rates of pay, whether the employee was to be paid by the hour, shift, day, or week, any allowances claimed as part of the minimum wage, the regular pay day, the name of the employer, the physical address of the employer's main office, and the employer's telephone number in both English and the employee's primary language, if different from English. N.Y. Lab. L. § 195(1)(a). The wage statement must include "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions;" and certain allowances. Id. § 195(3).

The Supreme Court explained in TransUnion LLC v. Ramirez, that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under

---

[5] The Amended Complaint contains two consecutive paragraphs 46. This citation refers to both.

12

Article III."  594 U.S. 413, 426 (2021).  The Supreme Court clarified that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."  Id. at 427 (emphasis in original).  Applying TransUnion to WTPA claims, the Second Circuit recently declared that in order to bring a claim under Section 195 of the NYLL, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm."  Guthrie v. Rainbow Fencing Inc., 113 F.4th 300, 308 (2d Cir. 2024).  Thus, after Guthrie, alleging only a statutory violation of the WTPA is insufficient.  Instead, a plaintiff sufficiently alleges an injury-in-fact when he claims, for example, that the failure to notify "prevented the employee from obtaining full payment of wages in a timely fashion."  Id. at 309.  "Courts in this Circuit are in agreement that a plaintiff has standing if he [or she] plausibly alleges that, by failing to provide the required wage statements, the employer was able to hide [its] violations of wage and hour laws and thus prevent the employee from determining and seeking payment for the precise amount of [his] unpaid wages."  Roma v. David Carmili, Physician, P.C., 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024) (collecting cases) (quotations omitted).

Plaintiff alleges that, due to defendants' failure to provide plaintiff with wage statements, plaintiff was "intentionally kept uninformed by Defendants about the lawful wage information, crucial for making informed decisions concerning his rights under the FLSA and the NYLL" and that "Defendants deliberately concealed such information with the aim of avoiding payment of the wages to which Plaintiff was rightfully entitled."  (Am. Compl. ¶ 47).  Accordingly, given that the Complaint adequately alleges downstream harm, the Court respectfully recommends that plaintiff be deemed to have sufficiently alleged an injury flowing from defendants' violations of the WTPA.

13

II.    Damages

A.  Legal Standard

When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the Complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992

After demonstrating the defendant's liability, the plaintiff must also establish his entitlement to damages to a "reasonable certainty."  Gunawan v. Sushi Sake Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).  "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'"  Guttman v. Klein, No. 03 CV 1570, 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).  In the context of a default judgment brought for violations of the FLSA and the NYLL, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." Gunawan v. Sushi Sake Rest., 897 F. Supp. 2d at 83–84.

When a court enters a default judgment and the damages do not consist of a sum certain, the Federal Rules of Civil Procedure provide that "[t]he Court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to . . . determine the amount of damages[.]"  Fed. R. Civ. P. 55(b)(2)(B).

14

While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989). Here, the plaintiff has provided reasonably detailed affidavits in support of his request for damages. (ECF Nos. 40-1 ("Andrade Decl."), 40-2 ("Stillman Decl.")). The Court also provided defendants an opportunity to request an inquest hearing or respond to plaintiff's motion. (ECF No. 41). Defendants did not pursue that opportunity. Thus, the Court sees no reason to delay a determination of plaintiff's damages.

### B.  Damages Requested by Plaintiff

Plaintiff requests $153,498 in damages, comprised of $71,749 in unpaid wages, $71,749 in liquidated damages, and $10,000 in statutory damages. (Stillman Decl. ¶ 34, 35).

### 1)  Unpaid Minimum Wages Under the NYLL

Plaintiff seeks reimbursement for the unpaid minimum wages that he should have received pursuant to the NYLL. (See Am. Compl. ¶¶ 13, 159-166, 167-170). Minimum wage under the NYLL is set at a different hourly rate depending on the employer's number of employees. Id. According to plaintiff's counsel's declaration, A to Z Hardware had 11 employees at all relevant times, qualifying it as a large employer for the purposes of calculating New York minimum wage. (Stillman Decl. ¶ 25). See N.Y. Lab. L. § 652(1)(a). New York's minimum wage increased over the course of plainitff's employment. A to Z Hardware was required to pay a minimum wage of $9.00 per hour from December 31, 2015 to December 30, 2016, $11.00 per hour from December 31, 2016 to December 30, 2017; $13.00 per hour from December 31, 2017 to December 30, 2018, and $15.00 thereafter. N.Y. Lab. L. § 652(1), (1)(a).[6]

---

[6] Although plaintiff's FLSA minimum wage claim was dismissed because plaintiff was making above the federal minimum wage, plaintiff was permitted to pursue the NYLL minimum wage claims because the minimum wage set

Plaintiff alleges that (1) from December 1, 2016 to August 2019, he worked 11 hours per day, six days per week at a rate of $12 per hour; (2) from September 2019 to August 2020, he worked 7 hours per day, 7 days per week at a rate of $12 per hour; (3) from September 2020 to June 2021, he worked 8 hours per day, 6 days per week at a rate of $12 per hour; (4) from July 2021 through May 2022, he worked 8 hours per day, 7 days per week, at a rate of $12 per hour with one day off every two months; and (5) from June 2022 through September 24, 2022, he worked 8 hours per day, 7 days per week at a rate of $13 per hour, with one day off every two months. (Id. ¶¶ 29-31).

Because plaintiff was making at or above the New York minimum wage from December 1, 2016 to December 30, 2017, the Court does not find he is entitled to any additional minimum wages for that period. (See Stillman Decl. ¶ 28). Plaintiff calculates he is owed: (1) $3,120 in minimum wages for 52 weeks of work between January 1, 2018 and December 31, 2018; (2) $4,600 in minimum wages for 39 weeks worked between January 1, 2019 and September 30, 2019; (3) $10,920 in minimum wages for 91 weeks worked between October 1, 2019 and June 30, 2021; and (4) $5,120 in minimum wages for 64 weeks worked between July 1, 2021 and September 24, 2022. (Id. ¶ 30, 31).

Plaintiff worked at least 40 hours per week for the entirety of his employment. Accordingly, to find plaintiff's owed wages, the Court multiplies the first 40 hours worked by the statutory minimum wage for each period and by the number of weeks in a given period and then subtracts plaintiff's actual wages paid for those 40 hours per week. Using the rates established supra, the Court calculates plaintiff's minimum wages owed as follows:

---

by the NYLL at all relevant times exceeded the federal minimum wage. Compare 29 U.S.C. § 206 with N.Y. Lab. L. § 652.

(1) From January 1, 2018 to December 31, 2018, the New York minimum wage was $13 and plaintiff's rate of pay was $12.  There were 52 weeks and 1 day in the period.  At $13 per hour for 40 hours of work, plaintiff should have been paid $520 per week, or $27,114.29 for the period.  Instead, he was paid $12 per hour, or $25,028.57 in total.  Plaintiff was underpaid by $2,085.72.

(2) From January 1, 2019 to May 30, 2022, minimum wage was $15 per hour and plaintiff's rate of pay was $12.  There were 178 weeks and 1 day during the period.  At $15 per hour for 40 hours of work, plaintiff should have been paid $600 per week, or $106,886.71 for the period.  Instead, he was paid $12 per hour, or $85,485.71.  Plaintiff was underpaid by $21,401.

(3) From June 1, 2022 to the end of plaintiff's employment on September 24, 2022, the New York minimum wage was $15 per hour and plaintiff's hourly wage was increased to $13 per hour.  At $15 per hour for 40 hours of work, plaintiff should have been paid $600 per week, or $9,942.86 for the period.  Instead, he was paid $13 per hour, or $8,618.57.  Plaintiff was therefore underpaid by $1,324.29.

Accordingly, the Court respectfully recommends that the district court award plaintiff $24,811.01[7] in damages for unpaid minimum wages under the NYLL.

  2) <u>Unpaid Overtime Wages Under the FLSA and NYLL</u>

Plaintiff seeks reimbursement for unpaid overtime wages under both the FLSA and the NYLL.  (<u>See</u> Am. Compl. ¶¶ 48-60).  Pursuant to the FLSA, an employee is entitled to be paid

---

[7] Plaintiff's counsel calculated that plaintiff is entitled to only $23,840 in unpaid minimum wages.  (Stillman Decl. ¶ 31).  However, she does not provide a damages chart or a calculation showing how she arrived at that number.  Instead, the time periods she uses to break down the wages owed—January 1, 2018 to December 31, 2018; January 1, 2019 to September 30, 2019; October 1, 2019 to June 30, 2021; and July 1, 2021 to September 24, 2022—are seemingly untied to any changes in New York minimum wage or changes in plaintiff's actual wages paid.

for overtime hours (*i.e.*, hours exceeding 40 hours per week), at a "rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). "Under the FLSA, the 'regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked[.]'" Pineda v. Frisolino, Inc., 2017 WL 3835882, at *10 (quoting 29 C.F.R. § 788.109). The regular rate of the employee as defined in the FLSA, however, "cannot be lower than" the applicable minimum wage. 29 C.F.R. § 778.5; Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017). Thus, under the FLSA, overtime pay should be calculated based on the employee's regular wage or the statutory minimum wage, "whichever is greater." Id. at *16 (citing 29 U.S.C. § 207; 29 C.F.R. § 778.107).

Under the NYLL, an employee is entitled to one-and-one-half times their regular rate of pay for hours worked in excess of 40 hours in one workweek. 12 N.Y.C.R.R. §§ 142-2.2, 146-1.4. The regular rate under the NYLL is calculated "by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5. As with the FLSA, under the NYLL, courts calculate an employee's overtime rate using the statutory minimum wage if the employee's pay falls below the minimum wage rate. Rosendo v. Everbrighten Inc., No. 13 CV 7256, 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015), report and recommendation adopted, 2015 WL 4557147 (S.D.N.Y. July 28, 2015).

Plaintiffs may not recover for unpaid overtime wages under both the NYLL and the FLSA. Fermin v. Las Delicias Peruana Rest., Inc., 93 F. Supp. 3d 19, 49 n. 15 (E.D.N.Y. 2015) (citing Pinzon v. Paul Lent Mech. Sys., Inc., No. 11 CV 3384, 2012 WL 4174725, at *3

18

(E.D.N.Y. Aug. 21, 2012) (holding that a plaintiff may "not double dip" or obtain "double recovery" of unpaid overtime wages under the FLSA and the NYLL), report and recommendation adopted by, 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012)).  Thus, to avoid double recovery and to allow for the recovery of prejudgment interest on plaintiff's overtime claim (see infra at 24–25), the Court recommends damages under the NYLL but not under the FLSA.

As discussed supra, plaintiff's regular rate of pay from December 1, 2016 through December 31, 2017 was $12.00 per hour.  Because this regular rate was higher than the then-minimum wage, the Court calculates his overtime rate during this period using his regular rate and finds plaintiff's overtime rate from December 1, 2016 through December 31, 2017 was $18.00 per hour.  From January 1, 2018 through the end of his employment, plaintiff was paid below the minimum wage.  Thus, the Court calculates plaintiff's overtime rate using the applicable minimum wage. Accordingly, plaintiff's overtime rate from January 1, 2018 through December 31, 2018 was $19.50 per hour and his overtime rate from January 1, 2019 through the end of his employment was $22.50 per hour.

Utilizing these overtime rates, the Court calculates plaintiffs' overtime damages as follows:

(1) From December 1, 2016 through December 31, 2017, plaintiff alleges he worked 66 hours per week, or 26 hours of overtime per week.  There were 56 weeks and 4 days during this period.  At an overtime rate of $18 per hour, plaintiff should have been paid $468 of overtime per week, or a total of $26,475.43.  Instead, plaintiff was paid $12 per hour, or $312 per week, totaling $17,650.28 over the period.  Plaintiff was therefore underpaid $8,825.14.

19

(2) From January 1, 2018 through December 31, 2018, plaintiff alleges he worked 26 hours of overtime per week.  There were 52 weeks and 1 day during this period.  At an overtime rate of $19.50 per hour, or $507 per week, plaintiff should have been paid $26,436.43.  Instead, plaintiff was paid $12 per hour, or $16,268.57 in total.  Plaintiff was therefore underpaid $10,167.86.

(3) From January 1, 2019 through August 30, 2019, plaintiff alleges he worked 26 hours of overtime per week.  There were 34 weeks and 4 days during this period.  At an overtime rate of $22.50, or $585 per week, plaintiff should have been paid $20,224.29.  Instead, plaintiff was paid $12 per hour, or $10,786.29 over the period.  Plaintiff was therefore underpaid $9,438.

(4) From September 1, 2019 through August 30, 2020, plaintiff alleges he worked 9 hours of overtime per week.  There were 52 weeks and 1 day during the period.  At an overtime rate of $22.50, or $202.50 per week, plaintiff should have been paid $10,558.93 over the period.  Instead, plaintiff was paid $12 per hour, or $5,631.43.  Plaintiff was therefore underpaid $4,927.50.

(5) From September 1, 2020 through June 30, 2021, plaintiff alleges he worked 8 hours of overtime per week.  There were 43 weeks and 2 days during this period.  At an overtime rate of $22.50, or $180 per week, plaintiff should have been paid $7,791.43.  Instead, plaintiff was paid $12 per hour, or $4,154.29 in total.  Plaintiff was therefore underpaid $3,637.14.

(6) From July 1, 2021 through May 30, 2022, plaintiff alleges he worked 8 hours per day, 7 days per week with one day off every two months, or approximately 6 days off. [8]

---

[8] Plaintiff does not allege the exact weeks he worked 6 days per week instead of 7.  He only alleges that he took one day off every two months from July 1, 2021 through the end of his employment.  Accordingly, the Court assumes

There were 47 weeks and 5 days during the period or 334 days during the period. Plaintiff therefore worked 328 days during the period. To account for the days off, the Court must calculate plaintiff's daily overtime pay. If plaintiff worked 16 hours of overtime per week, he worked approximately 2.2857 overtime hours per day. Multiplied by his overtime rate of $22.50, plaintiff should have been paid $51.43 overtime pay per day. Accordingly, plaintiff should have been paid $16,869.04 in overtime pay. Instead, at a rate of $12 per hour, plaintiff was paid $27.42 per day, or $8,993.76. Thus, plaintiff was underpaid by $7,900.28.

(7) From May 30, 2022 through the end of his employment on September 24, 2022, plaintiff alleges he worked 8 hours per day, 7 days per week with one day off every two months, or approximately 2 days off over the period. There were 16 weeks and 6 days in the period, or 118 days. Plaintiff therefore worked 116 days of the period. To account for the days off, the Court must again calculate plaintiff's daily overtime pay. If plaintiff worked 16 hours of overtime per week, he worked approximately 2.2857 overtime hours per day. Multiplied by his overtime rate of $22.50, plaintiff should have been paid $51.43 overtime pay per day. Accordingly, plaintiff should have been paid $5,965.88. Instead, at a rate of $12 per hour, plaintiff was paid $27.42 per day, or $3,180.72. Plaintiff was therefore underpaid by $2,785.16.

Accordingly, the Court respectfully recommends that the district court award plaintiff $47,681.08 in unpaid overtime wages under the NYLL.

---

that plaintiff worked 7 days per week the first 7 weeks of the period and took one day off every 8th week, repeating this cycle until the end of his employment.

21

3)  Liquidated Damages Under the FLSA and NYLL

Plaintiff also seeks liquidated damages for the defendants' wage violations pursuant to the FLSA and NYLL.  (Am. Compl. ¶¶ 6, 56, 60, Prayer for Relief (c), (g); ECF No. 40-3 ("Pl.'s Mem.") at 14).

The FLSA and NYLL provide for liquidated damages for wage-claim violations, calculated in an amount equal to 100% of the wage underpayments.  29 U.S.C. § 216(b); N.Y. Lab. L. §§ 198(1-a) and 663(1).  (See Pl.'s Mem. at 8).  Although plaintiff has proven that he was not paid the proper wages under both the FLSA and the NYLL, plaintiffs "are not entitled to recover twice for the same injury."  Charvac v. M & T Project Managers of N.Y., Inc., 2015 WL 5475531, at *4 (internal quotation marks and citations omitted); Llolla v. Karen Gardens Apartment Corp., 2014 WL 1310311, at *11;  Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 2010 WL 4159391, at *3.  Thus, having established wage violations under both laws, plaintiffs "may recover under the statute which provides the greatest amount of damages[.]"  Charvac v. M & T Project Managers of N.Y., Inc., 2015 WL 5475531, at *4 (quoting Jiao v. Shi Ya Chen, No. 03 CV 0165, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007)).

Prior to November 24, 2009, an employee could recover liquidated damages under the NYLL if the underpayment was found to be willful.  N.Y. Lab. Law § 663(1) (1967).  However, an amendment to the NYLL, effective November 24, 2009, "incorporated the federal standard" and shifted the burden of proving good faith to the employer.  Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (quoting Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)).  Under both the FLSA and the NYLL, the employer now bears the burden of proving good faith and reasonableness.

22

Under the NYLL's liquidated damages provision, "courts have not substantively distinguished the federal standard from the current state standard of good faith." Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015) (citing He v. Home on 8th Corp., No. 09 CV 5630, 2014 WL 3974670, at *7 n. 19 (S.D.N.Y. Aug. 13, 2014); Eschmann v. White Plains Crane Serv., Inc., No. 11 CV 5881, 2014 WL 1224247, at *9 (E.D.N.Y. Mar. 24, 2014)). Accordingly, the employer's burden of proving good faith "'is a difficult one, with double damages being the norm and single damages the exception.'" Gortat v. Capala Bros., 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) (awarding 100% liquidated damages under the FLSA standard) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)).

Since the defendants have chosen not to appear in this action and have not established that they had a good faith basis to believe that their underpayment of wages complied with the NYLL or the FLSA, the Court respectfully recommends that plaintiff be awarded liquidated damages under the NYLL. See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 92 (E.D.N.Y. 2012) (awarding liquidated damages under the NYLL for overtime wages, minimum wages, and spread-of-hours premiums).

Accordingly, the Court respectfully recommends that plaintiff be awarded liquidated damages in an amount equal to 100% of the sum of the overtime and minimum wages owed under the NYLL, totaling $72,492.09.

4) Wage Statement and Notice Penalties Under NYLL

Plaintiff requests $10,000 in wage notice and wage statement penalties. (Pl.'s Mem. at 14). Under the WTPA, as described above, an employer must provide wage notices, N.Y. Lab. L. § 195(1), and wage statements, N.Y. Lab. L. § 195(3). A plaintiff may recover statutory damages of $250 for each workday when the violations occurred, with a cap of $5,000, for each

23

of the two provisions violated.  N.Y. Lab. L. §§ 195(1), 195(3).  Plaintiff worked for defendants from December 1, 2016 through September 24, 2022.  He alleges he worked 6 days per week from December 1, 2016 to August 30, 2019, 7 days per week from September 1, 2019 through August 30, 2020, 6 days per week from September 1, 2020 through June 30, 2021, and 7 days per week from July 1, 2022 through September 24, 2022.  (Am. Compl. ¶¶ 29-31).  Thus, because plaintiff alleges violations of Section 1951(1) and 1953(3) on each day worked, and because the statutory damages of $250 per day would exceed the maximum damages permitted under the WTPA, plaintiff may be awarded the maximum of $5,000 in statutory damages for each claim for a total of $10,000.  See Soriano v. Amoun Inc., No. 16 CV 4257, 2017 WL 11745947, at *3 (S.D.N.Y. Mar. 16, 2017).

Given that plaintiff has adequately stated wage notice and wage statement claims under the WTPA, and defendants have failed to appear to contest plaintiff's claims, the Court respectfully recommends that plaintiff be awarded $10,000 in wage statement and notice penalties.

5)  Damages Summary

In sum, the Court respectfully recommends the following damages:

| | | |
|---|---|---|
| Overtime Wages | $ | 47,681.08 |
| Minimum Wages | $ | 24,811.01 |
| Liquidated Damages | $ | 72,492.09 |
| Wage Statement and Notice Penalties | $ | 10,000.00 |
| **TOTAL DAMAGES** | $ | 154,984.18 |

III.   Plaintiff is Entitled to Pre- and Post-Judgment Interest

Plaintiff seeks pre- and post-judgment interest on his damages.

A.  Prejudgment Interest

Under New York law, a plaintiff is entitled to interest on all wages awarded, calculated at a rate of 9% per annum.  See N.Y.C.P.L.R. § 5004.  Prejudgment interest is not available under the FLSA because the federal statute does not allow an employee to recover "prejudgment interest on any portion of their recovery for which they have been awarded federal liquidated damages," since liquidated damages under the FLSA "are considered compensatory in nature and thus serve as a form of pre-judgment interest."  Yuquilema v. Manhattan's Hero Corp., No. 13 CV 461, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 20, 2014) (citations and quotation marks omitted), report and recommendation adopted, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014); Yu G Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261 (S.D.N.Y. Oct. 21, 2008).  However, the Second Circuit has held that, because liquidated damages and prejudgment interest are not functional equivalents under the NYLL, a prevailing plaintiff may recover prejudgment interest for judgments rendered under the NYLL.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).[9]  Therefore, courts in this Circuit have awarded both liquidated damages and prejudgment interest on a plaintiff's NYLL claims.  E.g., Sanchez v. Ms. Wine Shop Inc., 643 F. Supp. 3d 355, 380 (E.D.N.Y. 2022).

---

[9] Where a plaintiff receives damages under both the FLSA and the NYLL, prejudgment interest accrues only on those parts of the award for which liquidated damages are not awarded under the FLSA.  Yuquilema v. Manhattan's Hero Corp., 2014 WL 4207106, at *11; Yu G Ke v. Saigon Grill, Inc., 595 F. Supp. 2d at 261.  Further, prejudgment interest may not be awarded under the NYLL in addition to liquidated damages that are awarded for violations of the FLSA.  See Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011); Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 92–93 (E.D.N.Y. 2012); see also Hengjin Sun v. China, 2016 WL 1587242, at *5–6 (citing cases and holding that plaintiffs are entitled to prejudgment interest on their non-overlapping NYLL wage claims at a simple rate of 9% per year).  Because the Court has not recommended an award of damages under the FLSA, this limitation on prejudgment interest does not apply.

25

In this case, since the Court did not recommend awarding plaintiff damages on his FLSA claims,[10] there is no impediment to awarding liquidated damages and interest on plaintiff's NYLL claims.  Accordingly, plaintiff is entitled to prejudgment interest on the $72,792.09 recommended award of minimum wage and overtime claims.

Prejudgment interest in New York is "computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred."  N.Y. C.P.L.R. § 5001(b).  In addition, "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  Id.  Where, as here, violations of the NYLL occur over an extended period of time, courts calculate prejudgment interest from a "single reasonable intermediate date."  Id.; see, e.g., Wicaksono v. XYV 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *9 (S.D.N.Y. May 2, 2011) (holding that, "[t]he plaintiffs have calculated prejudgment interest from the midway point of each plaintiff's employment, which is a reasonable approach").

In determining prejudgment interest, "[c]ourts have discretion in choosing a reasonable date from which to calculate" it.  Ladino v. Cordova, No. 21 CV 2449, 2024 WL 968898, at *4 (E.D.N.Y. Feb. 14, 2024), report and recommendation adopted, 2024 WL 967635 (E.D.N.Y. Mar. 6, 2024).  In this district, courts most often select a "median date between the earliest ascertainable date the cause of the action existed and the date the action was filed" from which to calculate prejudgment interest.  Id. (quoting Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d at 93).  However, courts have also held as reasonable a midpoint based upon the period of employment subject to the NYLL claim.  See, e.g., Thompson v. Hyun Suk Park, 18 CV 6, 2020

---

[10] Although the plaintiff established that defendants violated both the FLSA and NYLL, the Court only recommends an award of damages and liquidated damages under the NYLL.

WL 5822455, at *11 (E.D.N.Y. Sep. 1, 2020) (calculating the midpoint between plaintiff's start and end dates, which represented "the period in which the NYLL claim accrued"); Rosas v. M and M LA Solucion Flat Fixed Inc., No. 23 CV 1212, 2024 WL 4131905, at *17 (E.D.N.Y. Sep. 10, 2024) (calculating midpoint between date NYLL claims first accrued and end date of employment).

Plaintiff's claims accrued beginning his first day of employment on December 1, 2016 until his last day on September 24, 2022, or a total of 2,123 days. The midpoint between the two dates would therefore be 1,062 days after his employment began — October 29, 2019.

The Court therefore respectfully recommends that plaintiff be awarded prejudgment interest calculated at the statutory rate of 9 percent per annum from October 29, 2019 to the date of final judgment.

B. Post-Judgment Interest

Plaintiff is entitled to post-judgment interest under 28 U.S.C. § 1961(a). Under Section 1961(a), interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a). The Second Circuit has held that post-judgment interest is mandatory on all awards in civil cases as of the date judgment is entered. Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996). Accordingly, it is respectfully recommended that plaintiff be awarded post-judgment interest at the statutory rate, as calculated by the Clerk of Court, to the extent that any accrues after entry of judgment.

IV.   Attorney's Costs

Plaintiff seeks $570 in costs associated with litigating this action.[11]   Prevailing parties are generally able to recover costs.  However, recovery is available only for identifiable costs.  Moon v. Gab Kown, No. 99 CV 11810, 2002 WL 31512816, at *8 (S.D.N.Y. Nov. 8, 2002) (quoting Kuzma v. IRS, 821 F.2d 930, 933–34 (2d Cir. 1987).  "[T]he party moving for costs bears the burden of demonstrating the reasonableness of each charge; failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery."  John v. Demaio, No. 15 CV 6094, 2016 WL 7469862, at *12 (E.D.N.Y. Sept. 26, 2016).  Further, a court cannot award costs without the underlying invoices.  Id.

Both plaintiff's memorandum and counsel's declaration state that costs are "substantiated by the invoices annexed as Exhibit B."  (Stillman Decl. ¶ 46; Pl.'s Mem. at 15).  However, plaintiff has not included an Exhibit B with his motion.  Rather, his motion comprised only a Memorandum of Law in Support of the Motion for Default Judgment (ECF No. 40-3), the Andrade Declaration (ECF No. 40-1), the Stillman Declaration (ECF No. 40-2), and an affidavit affirming plaintiff's motion was made in compliance with the Soldiers' and Sailors' Civil Relief Act of 1940 and the New York State Soldiers' and Sailors' Civil Relief Act of 1951 (ECF No. 40-4).  None of these filings include any invoices or breakdowns of the costs in this matter.  Accordingly, the Court respectfully recommends that the district court deny counsel's request for costs.

---

[11] Although both the FLSA and NYLL allow for an award of attorney's fees,  see 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(4), 663(1); Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 473 (S.D.N.Y. 2009) (providing that the court in an FLSA action "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); see, e.g., Torres v. Gristede's Operating Corp., No. 04 CV 3316, 2012 WL 3878144, at *1 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 Fed. App'x 1, 3 (2d Cir. 2013), plaintiff has waived his claim for attorneys' fees.  (Andrade Decl. ¶ 19).

CONLCUSION

The Court respectfully recommends that plaintiff's motion for entry of a default judgment be granted, and that plaintiff be awarded $154,984.18 in damages under the NYLL as follows: (1) $24,811.01 in unpaid minimum wages plus prejudgment interest as described above; (2) $47,681.08 in unpaid overtime pages plus prejudgment interest as described above; (3) $72,492.09 in liquidated damages;  (4) $10,000 in wage statement and notice penalties; and (5) post-judgment interest.  Finally, the Court also respectfully recommends that plaintiff's request for costs be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiff is Ordered to serve a copy of this Report and Recommendation on defendants **today** via overnight delivery or courier and file proof of service immediately thereafter.  The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
        February 18, 2026

/s/ Peggy Cross-Goldenberg
Peggy Cross-Goldenberg
United States Magistrate Judge
Eastern District of New York

29